NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MIMI EVANS

                *Plaintiff*,

v.

CATHOLIC RELIEF SERVICES, LISA SIGNORELLI, and MARK MELIA,

                *Defendants.*

Civil No.: 2:18-cv-13537 (KSH) (CLW)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

Plaintiff Mimi Evans originally brought this action in New Jersey Superior Court, Bergen County, against her former employer and supervisors, defendants Catholic Relief Services-United States Conference of Catholic Bishops ("CRS"),[1] Lisa Signorelli, and Mark Melia, asserting violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., related to her termination. (D.E. 1, Removal Notice, Ex. A., Compl.) Defendants removed the action to federal court pursuant to 28 U.S.C. § 1332(a)(1). (Removal Notice 2.) Defendants now move to dismiss the complaint as to individual defendants Signorelli and Melia for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2) and to transfer the action to the District Court of Maryland under 28 U.S.C. § 1404(a). (D.E. 3.) In her opposition brief, Evans "concedes that this Court does not have . . . personal specific jurisdiction over Defendant Melia."

---

[1] In its moving brief, defendant notes that it was incorrectly pleaded as Catholic Relief Services. (D.E. 3-1, Moving Br. 1.)

(D.E. 10, Opp. Br. 18 f.4.) Evans subsequently dismissed Melia from the case on March 12, 2019. (D.E. 21.)

For the reasons expressed below, the Court grants the motion to transfer.

## BACKGROUND

CRS is the "official overseas relief and development agency of the Catholic community in the United States." (D.E. 3-1, Moving Br. 3, citing D.E. 3-3, Twele Decl. ¶ 2.) CRS is headquartered in Baltimore, Maryland, where both Signorelli and Melia work as managerial employees. (Compl. ¶¶ 1-3.)

Evans is a 69-year-old development professional residing in Edgewater, New Jersey. (Compl. ¶¶ 6, 9, 69.) She began working at CRS in February 2015 as a regional development director, "responsible for generating and/or increasing gift giving from private individual donors" within her region, which included New York, New Jersey, and Connecticut. (*Id.* ¶¶ 6, 8, 16.) Evans worked from her home office in New Jersey. (*Id.* ¶ 9.)

Evans alleges that during her first year at CRS, she received an above average performance review and a bonus from her then supervisor Lisa Railey. (*Id.* ¶¶ 20, 21.) Railey moved to another position within CRS in April 2016, and Signorelli replaced her. (*Id.* ¶ 23.) Evans alleges that "shortly thereafter" Signorelli began treating her in "an extremely hostile manner." (*Id.* ¶ 24.) Evans asserts that despite reporting "abusive treatment," "extreme harassment," and age discrimination on Signorelli's part to other CRS supervisors, "no steps were taken to investigate or remedy the situation." (*Id.* ¶¶ 25-32.)

In June 2016, Evans contacted Human Resources and "complained that she was being bullied and singled out due to her age by [] Signorelli." (*Id.* ¶ 33.) She alleges that HR informed her that CRS had no anti-bullying policy, and suggested she call a hotline—unaffiliated with

CRS—for counselling. (*Id.* ¶¶ 33-35.) Evans called HR again in September to speak "about the continuous and ongoing age discriminatory treatment" by Signorelli. (*Id.* ¶ 38.) At this point, Evans was given the option to file a formal complaint. (*Id.* ¶ 39.) Instead, she "chose what she considered a more constructive option of a mediation meeting." (*Id.* ¶ 40.)

On December 2, 2016, Evans attended the mediation with Signorelli at CRS headquarters in Baltimore. (*Id.* ¶ 41.) Evans alleges that she withdrew from the mediation because it was not the "constructive mediation she had anticipated, but a chance for [] Signorelli to double down on her abuse and aggression." (*Id.* ¶ 43.) Following the mediation, Evans received a below-average annual performance review from Signorelli, which Evans characterizes as "retaliatory" and the substance of which she disputes. (*Id.* ¶¶ 45, 49-51, 53.)

Evans claims that the continued "hostility and abuse" by Signorelli caused her emotional harm and physical distress, manifesting in ways that included Alopecia, shingles, irritable bowel syndrome, and work-related stress that required Evans to see a licensed therapist. (*Id.* ¶¶ 56-57.)

In March 2017, Signorelli placed Evans on a six-month performance improvement plan ("PIP"). (*Id.* ¶ 61.) Evans alleges that the PIP set forth "unattainable goals . . . to ensure [her] failure," and established targets beyond what was expected of other regional directors. (*Id.* ¶¶ 64-65.) Evans asserts that she did not receive the final PIP report in August, as scheduled, and when she asked about it Signorelli said that she was "too busy and could not do it for at least 6 weeks, leaving Evans extremely anxious and in great distress." (*Id.* ¶¶ 78-79.) During a phone conversation on October 5, 2017, Signorelli fired Evans. (*Id.* ¶¶ 82, 85.)

Evans asserts that her firing was "undeniably a matter of age discrimination and retaliation for repeatedly objecting to the continuous and ongoing [discrimination]," and alleges the following damages: "severe mental anguish, lost wages and benefits, financial harm, damage

3

to her professional reputation, profound pain and suffering and emotional distress." (*Id.* ¶¶ 94, 96.)

## DISCUSSION

**Motion to Transfer**

CRS moves to transfer this case under Section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer under Section 1404(a) is permissible independent of whether the court has personal jurisdiction over the defendant. *U.S. v. Berkowitz*, 327 F.2d 358, 361 (3d Cir. 1964) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466–67 (1962)). "The purpose of a discretionary transfer under Section 1404(a) is 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Eagle Pharm., Inc. v. Eli Lilly & Co.*, No. 17-6415, 2018 WL 3492145, at *5 (D.N.J. July 20, 2018) (Vazquez, J.) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). When the proposed forum is appropriate, a district court has the discretion to decide whether to transfer the action "according to an individualized, case-by-case consideration of convenience and fairness." *Schwartz v. Planalytics, Inc.*, No. 16-03933, 2017 WL 2812878, at *4 (D.N.J. June 29, 2017) (Hillman, J.) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

First the court must determine whether the proposed forum is appropriate. "[A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action the transferee forum at the time of the commencement of the action; *i.e.*, venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.

1970).  Venue is proper "in a judicial district where any defendant resides, if all defendants reside in the same State."  28 U.S.C. § 1391(a).  General jurisdiction exists in the district where an individual resides, or where the defendant is a corporation, "an equivalent place, one in which the corporation is fairly regarded as at home."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Here, CRS, the corporate defendant, is headquartered in Maryland and the remaining individual defendant, Signorelli, resides there. As such, the District Court of Maryland may exercise personal jurisdiction over the them, and the Court easily finds that the District of Maryland is an appropriate forum.

Next the Court must engage in a balancing test to determine whether litigation "would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  The guiding case is *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), in which the Third Circuit directed district courts to balance "all relevant factors" when applying § 1404(a), setting forth the specific public and private interests to be considered.  *Id.* at 879-80. The private interest factors relate to "the convenience of the parties and witnesses," 28 U.S.C. 1404(a), and include: (1) the plaintiff's choice of forum; (2) the defendant's preference of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties' financial and physical conditions; (5) the convenience of the expected witnesses; (6) the location of books and records; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017).

The "public interests to be balanced . . . instead derive from 'the interest of justice,' " and include: (1) the enforceability of the judgment; (2) judicial economy considerations;[2] (3) the

---

[2] Revising the *Jumara* factors, *In re: Howmedica Osteonics Corp.* clarified that " 'practical problems that make trial of a case easy, expeditious, and inexpensive' represent a private interest, as the Supreme Court stated in *Atlantic Marine*, 134 S.Ct. at 581 n.6, . . . and we

5

relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; (5) the public policies of the fora; and (6) in diversity cases, the familiarity of the trial judge with the applicable state laws. *Id.*

**Private Factors**

    **A. Plaintiff's Forum Choice**

Invoking Third Circuit law, Evans argues that a plaintiff's choice of forum is "paramount and should not be disturbed." (Opp. Br. 7, citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.").)

Defendants argue that notwithstanding this general rule, Evans's forum choice is entitled to significantly less deference for two reasons: (1) the "lawsuit centers on events that allegedly occurred in Maryland rather than New Jersey" (Moving Br. 17); and (2) Evans has conceded that this Court does not have specific jurisdiction over defendant Melia, which demonstrates that, as originally filed, this lawsuit was not in a "proper" forum (Reply 2). Though courts consider "location of the operative facts" in relation to a plaintiff's forum choice when the two are not aligned, it is a distinct factor in the transfer analysis, and therefore discussed separately below.

As to Evans's voluntary dismissal of Melia, defendants claim that Evans was "undoubtedly aware of Melia's tenuous connections to New Jersey when she filed her lawsuit," constituting a "frivolous attempt" to subject him to personal jurisdiction. (*Id.* 8.) Defendants

---

acknowledge judicial economy considerations to be a distinct, cognizable public interest." 867 F.3d at 402 n.7.

6

argue that Evans "abused, and should be deemed to have forfeited, her choice of litigating in her home state by naming in her complaint and seeking relief against an individual defendant over whom the Court plainly lacks jurisdiction." (*Id.* 2.)

According to the complaint, Melia "was a managerial employee of Defendant CRS, a supervisor of Defendant Signorelli and of Plaintiff Evans and acted under the color and capacity of his position with Defendants CRS and/or XYZ Corporations 1-10." (Compl. ¶ 3.) Signorelli "was a managerial employee of Defendant CRS, a supervisor of Plaintiff Evans and acted under the color and capacity of her position with Defendants CRS and/or XYZ Corporations 1-10." (*Id.* ¶ 4.) Throughout, the complaint alleges a cooperative relationship between Melia and Signorelli, characterizing Signorelli's disciplinary actions as done "at the direction of and with the express approval of Defendant Melia." (*See* Compl. ¶¶ 7, 51, 61, 85.) In addition, Evans alleges that Melia was informed early on about the "meritorious" nature of her discrimination claims and yet "no steps were taken to investigate or remedy the situation." (*Id.* ¶¶ 30-32.) The interconnectedness of the allegations against Melia and Signorelli makes Evans's ready dismissal of Melia for lack of personal jurisdiction a curious development, but not one that earns a "forfeiture" of her choice of forum. Notwithstanding, "black letter law" only demands deference to a plaintiff's choice of a *proper* forum, and by her own admission, this Court was never a proper forum for Evans's claims against Melia. The net result is that the Court is less inclined to grant Evans's choice of forum the typical deference.

### B. Location of the Operative Facts

Defendants argue that across the board, the events giving rise to Evans's claims occurred in Maryland. (Moving Br. 16-17.) Evans counters that her claims "arose in [New Jersey],"

where she "lived, worked, was hired, maintained her office, was discriminated and retaliated against and terminated in violation of the NJLAD." (Opp. Br. 9.)

When determining the location of operative facts, "[t]he proper analysis focuses on where the allegedly culpable conduct took place rather than on where the injury from that conduct manifested." *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, No. 1712445, 2018 WL 7108018, at *7 (D.N.J. Dec. 6, 2018) (Dickson, M.J.) (citing *Ass'n of Am. Physicians & Surgeons, Inc.*, No. 13-2609, 2014 WL 1334260, at *7 (D.N.J. April 2, 2014) (Sheridan, J.).) Where the operative facts occurred outside of the plaintiff's chosen forum, courts afford plaintiff's forum choice "substantially less deference." *McNulty v. J.H. Miles & Co.*, 913 F. Supp. 2d 112, 117, 120 (D.N.J. 2012) (Hillman, J.) (reasoning that a plaintiff's choice of forum may be accorded "substantially less deference" where a "substantial part of the events . . . giving rise to [the] claims occurred outside of [the forum]."); *see also Auto. Techs. Int'l, Inc. v. OnStar LLC*, No. 11-2490, 2011 WL 6303251, at *3 (D.N.J. Dec. 15, 2011) (Chesler, J.) (concluding that plaintiff's choice of forum "carries little sway, therefore, when balanced against Defendant's preference to transfer this case to Michigan, where its core offices are located and where the operative facts of this litigation are centered.").

The operative facts of Evans's suit occurred in Baltimore. Signorelli carried out the allegedly discriminatory and harassing conduct that violated the NJLAD from CRS's Baltimore headquarters. *See Huang v. Sonus Networks, Inc.*, No. 15-2407, 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016) (Wolfson, J.) (reasoning that the operative facts occurred in Massachusetts, where the alleged fraudulent statements were made during the course of a conference call). Additionally, CRS's Baltimore office houses its human resources department, which is central to the complaint because Evans blames the HR department and its

8

representatives for CRS's alleged failure to respond to her reports of discrimination and harassment. (*See* Compl. ¶¶ 33-44.) Notably, the failed mediation, which is the only in-person meeting between Signorelli and Evans mentioned in the complaint, was held in Baltimore. Indeed, all decisions concerning Evans's employment were made in Baltimore. While Evans may have felt the effects of the alleged conduct in her home forum, Baltimore remains the location of all operative facts of her lawsuit. This factor weighs heavily in favor of transfer, and further and significantly diminishes the deference to be granted to Evans's choice of forum.

### C. Convenience of the Parties and Witnesses

Defendants argue that venue in the District Court of Maryland is more convenient because all defendants reside there and "[r]equiring defendants and CRS's party witnesses to travel to New Jersey for this litigation would be costly and burdensome as well as disruptive to CRS's charitable operations." (Moving Br. 17.) Defendants likewise argue that "the relative inconvenience to [Evans] of litigating in Maryland would be slight," citing Evans's trips to Maryland while she worked at CRS. (*Id.* at 17-18.) Evans counters that "[t]ransfer of venue to M[aryland] would be an enormous economic, physical and logistical burden and severely prejudicial for [her], a 69-year-old N[ew Jersey] resident." (Opp. Br. 12.) Evans claims that she has been unable to "secure full-time employment since her wrongful termination from CRS . . . and is barely supporting herself on social security and a part-time salary." (*Id.*)

In reply, defendants seize on the fact that while Evans "saw fit to make detailed assertions in her Declaration about what she believes Melia's and Signorelli's annual salaries to be" and attached "a tax form containing financial information about CRS," she "provided zero information (let alone a shred of documentary evidence) concerning her assets and net worth or the amount of income she has earned since being terminated by CRS." (Reply 9.) Therefore,

9

defendants argue that the Court should disregard Evans's "generalized, unsubstantiated claims about her financial condition." (*Id.*)

The Court notes that defendants themselves offer generalities on the issue of the cost of a transfer, falling back on statements about CRS's mission and its reputation for minimizing administrative costs, which allows it to "deliver more aid directly to people in need" and "instill[] confidence in its donors." (Moving Br. 17.) The Court concludes that this factor is neutral.

When assessing the convenience of witnesses, the Court's focus is whether the witnesses may be unavailable for trial in one of the fora. *Jumara*, 55 F.3d at 879. Defendants argue that the complaint does not identify nonparty witnesses "located in New Jersey or who would not be available to testify unless subpoenaed by this Court." (Moving Br. 18.) In opposition, Evans asserts that "[m]ost of the non-party witnesses" she intends to call live in New Jersey, New York, and Connecticut. (Opp. Br. 12-13.) She cites to her appended declaration, which specifically identifies Thomas Gibbons, former VP of CRS Development, who lives in Brooklyn, New York, and generally references "donors who reside in [New Jersey, New York and Connecticut]." (*Id.*; Evans Decl. ¶ 69.)

In reply, defendants assert that Evans has not made any showing that Gibbons, the only potential non-party witness named in her declaration, would not voluntarily appear in Maryland. (Reply 10.) Further, defendants claim that Evans has not alleged that the "unidentified donors witnessed any of the alleged discrimination or other wrongful conduct asserted in the complaint," and her inclusion of them in this lawsuit "appears to be calculated to embarrass and annoy CRS by interfering with its relationships with its benefactors and will not result in the production of any relevant, admissible evidence." (*Id.*)

The Court is inclined to agree that Evans's single-line reference to her intention to involve CRS donors in this lawsuit and the mere fact that Gibbons resides in New York are insufficient to conclude this factor weighs against transfer, and finds it to be a neutral one.

The final convenience consideration is the location of relevant books and records. Evans argues that documents and records necessary to the litigation will be exchanged electronically, and therefore, this factor is neutral. (Opp. Br. 13.) Defendants argue that Evans's approach "would write this factor out of existence," and maintain their position that the physical location of the majority of relevant documents in CRS's Baltimore headquarters weighs in favor of transfer. (Reply 10.) In this age of electronic communication technology, and in the absence of any unusual circumstances compelling the production of unwieldly tomes and hard copy documents, this factor remains neutral.

**Public Factors**

Evans correctly states that the first factor, the enforceability of the judgment, "is a non-factor" because there is no likelihood of an enforcement problem in either venue. (Opp. Br. 13.)

With respect to the second public interest factor, judicial economy considerations, defendants raise the possibility that duplicative litigation could result if the Court finds it lacks jurisdiction over Signorelli and in turn, Evans refiles the suit against Melia and Signorelli in Maryland. (Moving Br. 18-19.) Evans denies any intention to litigate against Signorelli or Melia in Maryland. (Opp. Br. 14.) Because these arguments hinge on the personal jurisdiction determination, they are not relevant to the motion to transfer. The Court finds this factor to be neutral.

The third public interest factor considers whether "an appreciable difference in docket congestion between the two districts" exists. *Jumara*, 55 F.3d at 883. Both parties proffer

11

statistics from the United States Courts official government website to support their opposing positions. Defendants assert that for the 12-month period ending June 30, 2018, "the median time from filing to trial in civil cases was 54.4 months in the District of New Jersey and 31.5 months in the District of Maryland—a difference of roughly two years," and argue that "[t]his significant disparity in court congestion strongly militates in favor of transferring this case to the District of Maryland." (Moving Br. 19.) Evans highlights a different statistic—the time from filing to disposition[3]—which is 7.5 months in New Jersey and 7.8 months in Maryland. (Opp. Br. 14.) Evans argues that because "the overwhelming majority of matters in this Court are resolved prior to trial and the disposition time is shorter in New Jersey than in Maryland," this is the more relevant statistic, and therefore, "administrative difficulty provides no basis to warrant transferring a case that otherwise belongs here." (*Id.* at 15.) While the parties have labored to support their arguments on this factor, their competing statistics are proof of the enduring wisdom of Mark Twain's observation that "facts are stubborn things, but statistics are pliable." Whether there is "an appreciable difference in docket congestion between the two districts" remains in the eye of the beholder, and the Court finds this factor neutral.

Arguing that the fourth public interest factor, local interest in deciding local controversies, weighs in their favor, defendants state that Maryland has a "compelling interest in adjudicating conduct and entities within its borders." (Moving Br. 19.) Evans opposes by arguing that New Jersey has an "exceedingly strong interest in protecting [her]" because "the

---

[3] According to the "Explanation of Selected Terms" provided on the website, "[m]edian times from filling to disposition reflect all terminated civil cases, regardless of whether they were disposed of by trial or some other method." *Federal Court Management Statistics*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/explanation_of_selected_terms_september_2019_0.pdf (last updated March 31, 2019).

majority of the conduct that allegedly violated the NJLAD . . . occurred in her N[ew Jersey] office." (Opp. Br. 15-16.) The Court does not deem the facts here to constitute a local controversy specific to New Jersey. The only nexus between New Jersey and this case is the fact that the plaintiff worked from a home office in New Jersey. Rather, the fact that the alleged "egregious violations of the NJLAD" are charged against CRS and its Baltimore employees ties this controversy much more closely to Maryland. For example, the claim directly attributed to CRS relates to CRS's alleged lack of an "effective anti-discriminatory or non-retaliatory policy" and the organization's failure to conduct "training of its employees to prevent discrimination and retaliation in the workplace." (Compl. ¶ 55.) These allegations describe a "local controversary" grounded in Maryland, thus giving Maryland a superior interest in deciding these claims. This factor weighs in favor of transfer.

In framing the fifth public interest factor, the trial judge's familiarity with state law, defendants state that while "facially, a court situated in New Jersey is likely to have more familiarity with New Jersey law than a federal court in Maryland, [p]ractically speaking, district courts are constantly called upon to apply laws of states other than the forum state." (Moving Br. 20). Conversely, Evans contends that this factor is "one of the strongest and clearest in [her] favor" because "a judge sitting in N[ew Jersey], who routinely analyzes and applies the NJLAD is unquestionably more knowledgeable and adept in construing the NJLAD." (Opp. Br. 16.) The Court does not foresee that NJLAD's statutory scheme or legislative history, concerns raised by Evans, are beyond the ken of a Maryland court. This factor does not weigh against the transfer of the case.

Finally, Evans has not raised any conflicting public policies of the two fora that would weigh in favor of New Jersey. Evans notes that New Jersey "has clearly proclaimed its

comprehensive and overarching policy to eradicate the cancer of discrimination," but admits that she is "not aware of any M[aryland] public policies pertaining to the protection of its citizens against discriminatory treatment." (Opp. Br. 16.) In reply, defendants assert that Maryland shares New Jersey's public policy, which is "embodied in the Maryland Fair Employment Practices Act, which protects employees from discrimination, harassment, and retaliation based on age, race, sex and other enumerated characteristics." (Reply 12.) With a common public policy in place in both fora, this factor is rendered neutral.

## CONCLUSION

Considering these private and public interest factors collectively, the Court concludes that the fact that all of the events giving rise to Evans's claims occurred in Maryland carries the day, and effectively overcomes any weight typically afforded to a plaintiff's forum choice. This outcome is further supported by the public factor of the local interest in deciding local controversies, which decidedly weighs in favor of Maryland.

Defendants' motion to transfer venue is granted[4] and an appropriate order will follow.

Date: June 10, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J

---

[4] Defendants simultaneously moved to dismiss individual defendants. Based on the ruling herein that this action will be transferred, the Court declines to rule on defendants' motion to dismiss.